UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL NEALY, | : | |
| | | Case No. 2:20-cv-1100 |
| Plaintiff, | : | JUDGE SARAH D. MORRISON |
| | | MAGISTRATE JUDGE VASCURA |
| v. | : | |
| SHELLY & SANDS, INC., *et al.*, | : | |
| Defendants. | : | |

## OPINION & ORDER

Plaintiff Paul Nealy asserts that his former employer, Defendant Shelly & Sands, Inc. ("Shelly"), and former supervisor, Defendant Ryan Grezlik, denied him promotions and failed to return him to work based on his race and in retaliation for his prior complaints of race discrimination. (ECF No. 1.) Defendants deny all claims and move to dismiss under Fed. R. Civ. P. 12(b)(1), arguing that the Court lacks jurisdiction due to a mandatory arbitration provision contained within governing collective bargaining agreements. (ECF No. 5.) Mr. Nealy opposes (ECF No. 8) and Defendants' Reply (ECF No. 11) has been filed. For the reasons that follow, the Court **GRANTS** the motion and dismisses this action in its entirety without prejudice.

**I.    BACKGROUND**

In adjudicating this Motion to Dismiss, the Court accepts as true all well-pleaded factual allegations from the Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-9 (2009).

Mr. Nealy began working for Shelly as a seasonal carpenter in 2012. (ECF No. 1 at ¶¶ 12, 15-16.) He worked March through November of each year and had a winter layoff between November and March. *Id*. at ¶ 14.

His position was unionized and covered by two Collective Bargaining Agreements ("CBAs"). *Id.* at ¶ 18. The CBAs contain identical mandatory grievance and arbitration provisions. They also required him to be paid for transportation costs to any job more than seventy-four miles from his home. *Id.* Mr. Nealy completed jobs outside of that geographical restriction several times during his tenure at Shelly but Shelly did not reimburse him for related travel expenses. *Id.* at ¶ ¶ 19, 23-25. Shelly did reimburse Mr. Nealy's white co-workers for those costs. *Id.* at ¶ ¶ 19, 26. Mr. Nealy did not file a grievance on this issue; rather, he reported the incidents to Myra Johnson, Shelly's Equal Employment Opportunity Officer. *Id.* at ¶ 21.

In 2015, Mr. Nealy was the only African-American assigned to a welding project. *Id.* at ¶ 28. Tom Bates served as the foreman of the project. *Id.* Mr. Bates "consistently singled Mr. Nealy out by yelling at him for how long the tasks were taking to complete." *Id.* at ¶ 30. Mr. Bates was Mr. Nealy's foreman on a subsequent project. *Id.* at ¶ 31. Mr. Bates refused to give Mr. Nealy directions to the job site. *Id.* at ¶ 33. When Mr. Nealy reported Mr. Bates' actions to Ms. Johnson, she sent Mr. Grezlik to the job site. *Id.* at ¶ 34. Mr. Grezlik told the men that he "hated it when guys call EEO" and specifically mentioned Mr. Nealy's previous complaint for unpaid accommodations. *Id.* at ¶ 37.

Shelly offered Mr. Nealy a promotion to foreman on a project during 2015, for which he needed training. *Id.* at ¶ ¶ 39, 43. Mr. Nealy was the only African-American in the training class and the only participant who did not receive paid lodging from Shelly. *Id.* at ¶ ¶ 45-47. After his training, Shelly did not place him in a foreman position. *Id.* at ¶ 50. Instead, Mr. Nealy learned that Mr. Grezlik had stated that he did not want Mr. Nealy working at Shelly. *Id.* at ¶ ¶ 52, 54. Mr. Nealy reported Mr. Grezlik's comment to Ms. Johnson. *Id.* at ¶ 54. Mr. Nealy never received a foreman position.

In November 2017, Mr. Nealy worked with two other African-Americans on a project. *Id*. at ¶ 75. All three were laid off from the project due to lack of work but other white carpenters remained on the job. *Id*. at ¶¶ 77-79.

In 2018, Mr. Nealy made numerous calls to Shelly employees asking to be reinstated as a foreman without receiving an answer. Shelly did not return Mr. Nealy to work that year. *Id*. at ¶¶ 83-115. Mr. Nealy did not file a grievance and did not pursue arbitration. Instead, Mr. Nealy lodged a charge with the Equal Employment Opportunity Commission and received his Right-to-Sue Letter on December 11, 2019.

He timely filed the instant Complaint. Therein, he alleges that Defendants violated the Reconstruction Civil Rights Act, 42 U.S.C. § 1981; Title VII of the Civil Rights Act, 42 U.S.C. ¶ 2000e *et seq*., and related state laws found in Ohio Revised Code Chapter 4112 by refusing to promote him due to his race and by terminating him in retaliation for his complaints to Ms. Johnson. He seeks reinstatement, back pay and compensatory damages.

## II. STANDARD OF REVIEW

Rule 12(b)(1) provides that the defendant may file a motion to dismiss based on a "lack of jurisdiction over the subject matter."[1] Fed. R. Civ. P. 12(b)(1). The standard of review for a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the

---

[1] "A motion to dismiss based on an arbitration clause 'does not technically deprive the Court of subject matter jurisdiction,' and so such a motion is more properly brought under Rule 12(b)(6) than Rule 12(b)(1)." *Jacobs Field Servs. N. Am., Inc. v. Wacker Polysilicon N. Am., LLC*, 375 F. Supp. 3d 898, 910-11 (E.D. Tenn. 2019), 375 F. Supp. 3d at 910-11 (quoting *Liveware Publ'g, Inc. v. Best Software, Inc*., 252 F. Supp. 2d 74, 78 (D. Del. 2003)). "Courts have nevertheless allowed defendants to proceed under Rule 12(b)(1) in seeking dismissal based on an arbitration agreement, and the standards for considering a Rule 12(b)(6) motion and a Rule 12(b)(1) facial attack are similar." *Jacobs,* 375 F. Supp. 3d at 910-11.

3

defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County*, 847 F.3d 812, 816-17 (6th Cir. 2017). Only the former is present here. *See Jacobs*, 375 F. Supp. 3d at 910 n.10 (E.D. Tenn. 2019) (holding defendant's motion to dismiss due to a mandatory arbitration clause under Rule 12(b)(1) raises a facial, rather than a factual, attack). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject-matter jurisdiction." *Arnold v. Liberty Mut. Ins. Co.*, 392 F. Supp. 3d 747, 762 (E.D. Ky. 2019). This type of challenge "questions merely the sufficiency of the pleading," *Gentek Bldg Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citation omitted) and requires the district court to "take[] the allegations in the complaint as true." *Id*. "If those allegations establish standing, jurisdiction exists (subject, of course, to later challenge if the allegations prove false)." *Solis v. Emery Fed. Credit Union*, No. 1:19-cv-387, 2020 U.S. Dist. LEXIS 82366, at *9 (S.D. Ohio May 11, 2020). The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Boyd v. United States*, 932 F. Supp. 2d 830, 834 (S.D. Ohio 2013) (citation omitted).

### III.   MATTERS OUTSIDE OF THE PLEADINGS

Each side submits documents outside of the pleadings in support of their respective positions. Typically, the Court does not consider such matters when ruling on a motion to dismiss. The chief concern when considering extrinsic materials on a motion to dismiss is that defendants seeking dismissal not suffer "any prejudicial surprise" as a result of those materials. *See Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997). Thus, where extrinsic materials "add nothing new, but, in effect, reiterate the contents of the complaint itself," they may be considered without converting a motion to dismiss to a motion for summary judgment. *Id.* at 445.

The Complaint mentions the CBAs. (ECF No. 1 at ¶ 18.) Defendants provide copies of the governing CBAs and authenticate same via the affidavit of Andrew Leffler. (ECF No. 5-1.) Mr. Nealy does not oppose the submission, authentication or content of those documents. "[A] court may consider . . . 'exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein' . . . ." *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)). Thus, the CBAs are not materials outside the pleadings and the Court will consider them while addressing the present motion.

Mr. Nealy proffers his Declaration to buttress his Complaint. (ECF No. 8-1). The Declaration, executed after the Complaint was filed, does provide new information. Specifically, it relays that Mr. Nealy reported his unreimbursed hotel stays to Mr. Richie Brown, the designated Carpenters Business Agent for Shelly's Heavy Highways Operations. Mr. Nealy also states that he told Lead Business Agent Mark Mohen that his layoff was racially motivated. In addition, Mr. Nealy declares that he called the Carpenters Regional Office in May or June 2018 seeking assistance in filing a grievance. Mr. Nealy declares that he contacted Lead Business Agent Troy Woodyard for the same purpose after the Complaint was filed. None of those allegations were contained within the Complaint. In sum, the Declaration avers that Mr. Nealy did lodge grievances with the union while his Complaint concedes that he did not. (ECF No. 1 at ¶ 21.) Because the Declaration provides new and conflicting information that would yield "prejudicial surprise" to Defendants, the Court will not consider the Declaration for purposes of the instant motion.

**IV.   ANALYSIS**

Defendants maintain that the CBAs contain a mandatory grievance and arbitration provision that serves to deprive the Court of subject matter jurisdiction because Mr. Nealy did not attempt to arbitrate his grievances before filing this case. Mr. Nealy admits that the CBAs apply, but argues that they do not mandate arbitration because they fail to specifically reference § 1981, Title VII and Chapter 4112. Alternatively, he contends that the arbitration requirement does not apply to his retaliation claim and that pursuing arbitration would have been futile such that the Court should ignore the arbitration requirement. Defendants reply that the CBAs are sufficiently specific, that the CBAs' scope includes retaliation claims, and that alleged futility does not bar enforcement of the mandatory arbitration provision. Defendants' arguments prevail.

**A.  The CBAs Contain a Clear and Unmistakable Waiver**.

The Court begins its analysis with the content of the CBAs. Each contain the following equal opportunity, "Non-Discrimination" language:

> It is a condition of this agreement to provide equal opportunity in employment for all qualified persons, and to prohibit discrimination in employment because of race, creed, color, sex, age or national origin. There shall be full compliance with all applicable Federal and State Statutes, regulations, rules and orders of appropriate Federal or State agencies having jurisdiction over the subject matter of discrimination in employment.

(ECF No. 5-1 at § 8.4.) The CBAs further direct that:

> Any and all claims regarding equal employment opportunity provided for under this Agreement or under any federal, state or local fair employment practices law shall be exclusively addressed by an individual employee or the union under the grievance and binding arbitration provision of this agreement.

(ECF No. 5-1 at § 6.2b.) Section 6.3 details the four-step mandatory grievance and arbitration procedure. (ECF No. 5-1 at § 6.3.) First, the Local Business Representative meets with Shelly's

6

representative to attempt to resolve the dispute. If no agreement is reached, then the grievance must be reduced to writing and referred to a two-member committee for settlement discussions. If compromise is not possible, then a union representative and an individual from the Ohio Contractor's Association meet and confer. If no settlement is reached, then binding arbitration occurs.

Arbitration provisions are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983). Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle a controversy thereafter . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA manifests "a liberal federal policy favoring arbitration agreements." *Id.*; *see also* 9 U.S.C. §§ 1–16. The Act creates "a presumption in favor of arbitration," *Marchetto v. DeKalb Genetics Corp*., 711 F. Supp. 936, 938 (N.D. Ill. 1989) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 625 (1985) and *Moses*, 460 U.S. at 24–25 (1983)), and requires that courts "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). "Unless 'the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter.'" *Lavender v. Titanium Metals Corp*., 2019 U.S. Dist. LEXIS 194841, *3 (S.D. Ohio November 8, 2019) (Sargus, J.) (quoting *Granite Rock Co. v. Int'l Brh. of Teamsters*, 561 U.S. 287, 301 (2010) (citation omitted)).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. §

7

4. In cases where all claims are referred to arbitration, the entire litigation may be dismissed rather than merely stayed. *Hensel v. Cargill, Inc.*, No. 99–3199, 198 F.3d 245 (table), 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999); *see also Lavender*, 2019 U.S. Dist. LEXIS 194841, at *3. Defendants seek full dismissal here.

The Sixth Circuit applies a four-pronged test to evaluate a motion to dismiss the proceedings for failure to arbitrate:

> (1) The Court must determine whether the parties agreed to arbitrate;
> (2) The Court must determine the scope of the agreement;
> (3) If federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable; and
> (4) If the Court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). In applying this test, "doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration." *Id*. at 715.

As to the first two *Stout* factors, both sides concur that the CBAs contain a valid arbitration provision. But Mr. Nealy disputes that the scope of that section includes his current claims pursuant to *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998), and *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631-32 (6th Cir. 1999). Scope "is a matter of contract interpretation since arbitration 'is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Lavender*, 2019 U.S. Dist. LEXIS 194841, at *5 (quoting *Int'l Ass'n of Machinists v. AK Steel Corp.*, 615 F.3d 706, 711 (6th Cir. 2010) (quotation omitted)).

In *Wright*, the Supreme Court examined whether the right to raise discrimination claims in a judicial forum had been waived pursuant to a collective bargaining agreement's arbitration clause that only required arbitration for "any matters under dispute." *Wright*, 525 U.S. at 80.

Because the agreement did not include any explicit antidiscrimination provision or language requiring that discrimination claims be arbitrated, the Supreme Court determined that the waiver was not "clear and unmistakable" and answered the query in the negative. *Id.*

The Sixth Circuit subsequently elaborated on the "clear and unmistakable" requirement in *Bratten*. Therein, the court was faced with a collective bargaining agreement that failed to expressly incorporate a provision requiring compliance with the ADA. *Bratten*, 185 F.3d at 631. In addition, the agreement's waiver of statutory claims was "a wholly separate provision from the grievance resolution procedure set forth" in the agreement. Consequently, the court reasoned that "including a provision in a collective bargaining agreement that prevents discrimination against employees under a federal statute is not the same thing as requiring union members to arbitrate such statutory claims." *Id.* at 631-32 (citation omitted). *Bratten* thus held that "a statute must specifically be mentioned in a[n] [Agreement] for it to even approach *Wright's* 'clear and unmistakable' standard." *Bratten*, 185 F.3d at 631. Accordingly, Mr. Nealy focuses on the CBAs' failure to explicitly mention the specific statutes that he now proceeds under to argue that the CBAs' arbitration provision is unenforceable under *Wright* and *Bratten*. His argument fails.

The CBAs contain an explicit provision barring employment discrimination and a specific requirement that "any and all claims regarding equal employment opportunity provided for under [the CBAs] or under any federal, state or local fair employment practices law shall be exclusively addressed by an individual employee or the union under the grievance and binding arbitration provision of [the CBAs]." (ECF No. 5-1 at § § 8.4 and 6.2b.) Each of those provisions were missing from those examined in *Wright* and *Bratten*.

Defendants rightly rely upon *Lavender* to argue that the CBAs contain the requisite specificity. The *Lavender* court faced the same issue presented here—whether the scope of a

9

CBA's mandatory arbitration clause extended to plaintiff's discrimination and retaliation claims. *Lavender*, 2019 U.S. Dist. LEXIS 194841 at *4. The *Lavender* CBA, like the instant CBAs, had an explicit antidiscrimination clause referencing "state and federal laws prohibiting discrimination in employment on the basis of race, color, religious creed, sex, age, disability or national origin." *Id.* at *7. The *Lavender* agreement further provided "claims of violations of this policy and these laws shall be subject to the grievance and arbitration procedure in Article IX which shall be the exclusive forum for the resolution of such claims." *Id*. at *8. With those provisions in mind, the court held:

> [b]y defining the state and federal discrimination laws that apply and then explicitly requiring arbitration of claims arising under those laws, the CBA satisfies the concerns of *Bratten* . . . . That is, the CBA's Civil Rights section not only "include[s] a provision in a collective bargaining agreement that prevents discrimination against employees under [state and] federal statute[s]" but also "requir[es] union members to arbitrate such statutory claims."

*Id.* (quoting *Bratten*, 185 F.3d at 631-32). Consequently, the court found that the CBA was sufficiently specific and granted the employer's motion to dismiss the case. *Id*. at *8.

The Court sees no reason to reach a different result here. The scope of the CBAs includes arbitrating Mr. Nealy's discrimination and retaliation claims.

Mr. Nealy attempts to partially bypass that result by arguing that the CBAs do not extend to his retaliation claims because retaliation is not explicitly mentioned in the CBAs. He argues retaliation "is covered in separate sections of virtually every modern discrimination statute, involves separate administrative charges," and "has a separate meaning" from discrimination. (ECF No. 8 at 16-17.) So, he contends, he is free to pursue his retaliation counts in this proceeding.

10

He is not. "Retaliation is, by definition, an intentional act. It is a form of 'discrimination' because the complainant is being subjected to differential treatment." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-174 (2005). Moreover, Title VII expressly provides for a retaliation claim as a form of discrimination as follows:

> It shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this title . . . , or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title . . . .

42 USCS § 2000e-3. Section 1981 likewise allows individuals to pursue retaliation claims. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 451 (2008). Finally, Chapter 4112 directs that is an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." In sum, the United States Supreme Court and each statute upon which Mr. Nealy proceeds defines discrimination to include retaliation. The CBAs' scope therefore includes his retaliation claims.

The third *Stout* factor involves considering whether Congress intended Mr. Nealy's federal claims be non-arbitrable. Courts have held that § 1981, Title VII and Chapter 4112 claims may be arbitrated. *See Lambert v. Tesla, Inc*., 923 F.3d 1246, 1251 (9th Cir. 2019) (holding § 1981 claims were arbitrable); *Cooper v. MRM Inv. Co*., 367 F.3d 493, 509 (6th Cir. 2004) ("Congress did not intend to exclude Title VII claims from arbitration."); *Lavender*, 2019 U.S. Dist. LEXIS 194841 (dismissing Chapter 4112 claim pursuant to governing arbitration clause).

11

In sum: (1) the parties agreed to arbitrate; (2) the CBAs' arbitration provision is sufficiently specific to satisfy *Wright* and *Bratten;* (3) the CBAs' scope includes all of Mr. Nealy's claims, and (4) Congress did not intend for his claims to be non-arbitrable. These holdings render the fourth *Stout* factor inapplicable and require dismissal of the entire action without prejudice. "The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000)(quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). Defendants' Motion to Dismiss is **GRANTED**. (ECF No. 5.)

### B. Neither the Labor Management Relations Act nor Futility Bar Dismissal.

Mr. Nealy makes two counterarguments to dismissal. Both prove unpersuasive. First, he argues that he should not be required to adhere to the mandatory grievance and arbitration provision pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). (ECF No. 8 at 20.) Second, he asserts that engaging in the grievance process would have been futile. (ECF No. 8 at 23.)

#### 1. The LMRA

Because examination of the CBAs themselves is unnecessary to resolve his discrimination and retaliation claims, Mr. Nealy argues that the Court should decline to hold that arbitration is required here. In support, he asserts that the Court should apply the approach taken in § 301 LMRA suits to interpret the CBAs to not require him to grieve and arbitrate. Case law under that act involves claims by and against labor organizations. 29 U.S.C. § 185(a). Section 301 of the LMRA addresses preemption of state law rules that substantially implicate the meaning of collective bargaining agreement terms. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985).

This case does not involve the LMRA. No claims by or against a labor union are involved. There are no preemption issues. Given those differences and the lack of authority rendering the LMRA applicable and controlling, the Court finds Mr. Nealy's argument to be unsuccessful.

### 2. Futility

Lastly, Mr. Nealy argues that he should not have to grieve as the CBAs require because doing so would be futile. He argues that pursuing that avenue would have been useless due to the "combination of his inability to pursue grievances on his own . . . and application of the 48-hour period within which to file a grievance on his promotion and recall claims . . . ." (ECF No. 8 at 23.) Defendants correctly respond that case law negates this ground of opposition. (ECF No. 11 at 10-13.)

The first such case is *Winston v. General Drivers, Warehousemen & Helpers, Local Union No. 89*, 93 F.3d 251 (6th Cir. 1996). Therein, the Sixth Circuit addressed whether an employee could be excused from adhering to a CBA's mandatory grievance procedure due to claimed futility. The court differentiated between internal union grievance procedures and contractually mandated grievance procedures, holding that "[e]xhaustion of contractual grievance procedures is *always* required," where, as here, a plaintiff fails to commence the "grievance procedure mandated by the parties' collective bargaining agreement." *Winston*, 93 F.3d at 256 (emphasis added).

The second case is *Wade v. GMC*, Case No. C-3-95-26, 1997 U.S. Dist. LEXIS 23752 (S.D. Ohio Mar. 17, 1997). The *Wade* court considered whether claimed futility could override an employee's failure to abide by the CBA's mandatory grievance and arbitration provision before initiating a discrimination suit. *Wade*, 1997 U.S. Dist. LEXIS 23752, at *20, 21. Citing to

13

*Winston*, the court held that because the case involved "contractual grievance procedures," "the futility doctrine cannot apply to this case. . . [and] judgment must be entered against the Plaintiff due to his failure to exhaust the mandatory grievance procedures." *Id*. at *21.

The case *sub judice* mirrors the scenarios present in both *Winston* and *Wade*. Mr. Nealy's CBA contains a compulsory grievance provision. Mr. Nealy admits that he did not file a grievance. (ECF No. 1 at ¶ 21.) He argues that he should be excused from that requirement on futility grounds. Because the grievance provision is contractual, futility is inapplicable under *Winston* and *Wade*.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. (ECF No. 5.) This action is dismissed without prejudice.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**